David J. Elkanich, WSBA No. 35956
E-mail: serve.dje@hklaw.com
HOLLAND & KNIGHT LLP
2300 US Bancorp Tower
111 SW Fifth Avenue
Portland, OR  97204
Telephone:  503.243.2300

*Attorneys for Encore Capital Group, Inc., Midland Funding LLC, Midland Credit Management, Inc.*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON
AT SPOKANE

| | |
|---|---|
| RACHEL ELSTON, and all others similarly situated,<br><br>        Plaintiffs,<br><br>   v.<br><br>ENCORE CAPITAL GROUP, INC., MIDLAND FUNDING, LLC, MIDLAND CREDIT MANAGEMENT, INC.,<br><br>        Defendants. | Case No. 2:18-cv-00071-TOR<br><br>**DEFENDANTS ENCORE CAPITAL GROUP, INC., MIDLAND CREDIT MANAGEMENT, INC.  AND MIDLAND FUNDING LLC'S MOTION FOR SUMMARY JUDGMENT AND INCORPORATED MEMORANDUM OF LAW**<br><br>**With Oral Argument<br>Hearing date to be determined after June 4, 2019** |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

Pursuant to Federal Rule of Civil Procedure 56 and LCivR 56, Defendants Encore Capital Group, Inc. ("Encore"), Midland Credit Management, Inc. ("MCM") and Midland Funding LLC ("Midland Funding") (collectively "Defendants"), hereby move for summary judgment in their favor and against Plaintiff Rachel Elston ("Plaintiff").[1]

## I.   PRELIMINARY STATEMENT

On March 28, 2017, MCM sent Plaintiff a letter ("Letter") which attempted to collect on a valid and outstanding obligation that Plaintiff owed MCM.  In addition to other information, the Letter clearly and plainly disclosed that the statute of limitations related to the account had expired and thus, MCM would not sue Plaintiff regarding the obligation.  Specifically, the Letter stated on no uncertain terms that "[t]he law limits how long you can be sued on a debt and how long a debt can appear on your credit report. Due to the age of this debt, *we will not sue you* for it."  *See* ECF No. 1 at 16. This verbatim disclosure – no more and no less – was required to be in the Letter pursuant to a Consent Order that MCM entered into with the CFPB in 2015.  *See* Declaration of John Nord (the "Nord Decl.) at ¶ 12 (referencing Consent Decree as Exhibit 3).  MCM could not have been clearer that Plaintiff would *never* be sued on this account.

Plaintiff, however, chose to file this class action lawsuit, which asserts that the

---

[1] Pursuant to LCivR 56(c)(1) Defendants are filing a Statement of Material Facts Not in Dispute contemporaneously with the filing of this Motion for Summary Judgment.

1
2
3
4
5
6
7
8
9
10
11
12

disclosure above was incomplete, insufficient, left fear that she could still be sued, and therefore that the Letter violates the Fair Debt Collection Practices Act ("FDCPA"). Specifically, the Plaintiff contends that there should have been additional language added to the disclosure advising her that, if she were to make a payment on the debt, she might be at risk of "reviving" the expired statute of limitations (and therefore at risk that MCM would sue her). Not only is Plaintiff's contention completely unsupported by the law, it flies in the face of logic, and is nonsensical when considered in the context of the facts in the record. Plaintiff's attempt to paint a picture that her consumer rights have been aggrieved fails to withstand scrutiny for multiple reasons.

13
14
15
16
17
18
19
20
21
22
23
24

*First*, the Letter accurately stated that Plaintiff owed an obligation, but also was very clear about the fact that the law limited MCM's options on the obligation, and that due to the age of the debt, one of the options that MCM would not exercise was suing Plaintiff on the account. The Letter communicated this clearly that to Plaintiff, describing the age of the debt, the state of the law, and punctuating the phrase with the statement "***we will not sue you…***" The disclosure is unequivocal, contains no qualifiers, and thus leaves no question (even in the mind of the hypothetical least sophisticated consumer) about whether MCM would sue. It does not say "we will not sue you unless…" It says "we ***will not*** sue you." Period.

25
26

Plaintiff's contention – which is unsupported by the record – is that even though the Letter contained this clear statement, it is nevertheless misleading because Plaintiff

could have been sued had she made a partial payment on the account. Setting aside that her fear is merely hypothetical because she made no payments, such a clear disclosure cannot mislead the reader regarding the possible consequences of partial payments. Indeed, no matter the hypothetical scenario – here, that the Plaintiff *might* make a partial payment, resulting in a revived statute of limitations – the disclosure flat-out states that, "due to the age of the debt," MCM *will not* sue Plaintiff. Nothing more is required to ensure that Plaintiff is aware of the true state of the account.

*Second*, Plaintiff does not accurately frame Washington law as it relates to partial payment of time-barred accounts. The Complaint incorrectly *assumes* that partial payment *automatically* revives a time-barred account. In order to legally "revive" a debt in Washington, however, the law requires an acknowledgement by the consumer showing *an intent* to revive the entire amount of the debt. In other words, a "partial payment" is wholly insufficient to revive a debt. Accordingly, the least sophisticated consumer could not be misled by the absence of such a disclosure. Indeed, if MCM were to include a disclosure stating that a partial payment alone would restart the statute of limitations, such a disclosure would be contrary to Washington law and itself misleading.

*Third*, Defendants have a well-publicized, consumer-friendly, policy of never reviving statutes of limitation once expired (for any reason). As a result, even if Plaintiff had made a partial payment after the statute's expiration, and even if such a payment revived the statute of limitation (it would not), MCM would *still* never sue her. Given

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

that policy, there is nothing misleading about the Letter. To the contrary, including a partial payment disclosure would not only be a misrepresentation of Defendants' policies, but it could confuse the least sophisticated consumer, especially one who was familiar with MCM's "no revival" policy.

*Fourth*, both the CFPB and the Federal Trade Commission ("FTC") have ***expressly declined*** to require that collection letters state that partial payments might revive a time-barred debt. *See* Small Business Review Panel for Debt Collector and Debt Buyer Rulemaking, Outline of Proposals Under Consideration and Alternatives Considered, July 28, 2016 at 19 (indicating that the "Bureau's testing to date suggests that consumers may not fully understand such a disclosure, because it seems counterintuitive to them."). Defendants cannot have misled Plaintiff under the FDCPA when regulatory agencies tasked with enforcement of that statute have determined that additional warnings on this subject are not required and, in fact, may confuse consumers.

*Finally*, Plaintiff has not established that Encore or Midland Funding are debt collectors under the FDCPA. Neither entity meets the statutory definition given that they do not interface directly with consumers and do not service accounts on behalf of others. Accordingly, Defendants are entitled to judgment in their favor on this issue.

Plaintiff cannot make up in creativity what his Complaint lacks in substance. She cannot end-run persuasive regulatory guidance, the Consent Decree binding Defendants to use the exact language set forth in the letter, and Defendants' internal policies in an

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

effort to manufacture an FDCPA claim.  To that end, this Court should decline Plaintiff's invitation to convert a perfectly legal letter into a purported misleading practice solely by relying on conclusory allegations.  For these reasons set forth below, summary judgment must be granted in Defendants' favor on all claims.

## II.    BRIEF PROCEDURAL BACKGROUND

On or about February 27, 2018, Plaintiff filed a Complaint alleging that Defendants' attempts to collect debts that were purportedly beyond the statute of limitations violated the Fair Debt Collection Practices Act ("FDCPA"). [ECF No. 1]. The Complaint contends that these purported violations stemmed from a single letter sent by MCM to Plaintiff that included the above-referenced explicit disclosure.  *Id*. at 9.  The Complaint contains one cause of action alleging that Defendants violated 15 U.S.C. §§ 1692e, 1692e(2)(A). and 1692e(10).  *Id*. at 12-13.

## III.    LEGAL STANDARDS

### A.    Summary Judgment Standard

Under Federal Rule of Civil Procedure 56, summary judgment "shall" be granted if "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  While the moving party bears the burden of establishing there are no "genuine dispute[s] as to any material fact," that burden may be met "by demonstrating that there is a lack of evidence to support the essential elements that the non-moving party must prove at trial."  *Moton*

*v. Cowart*, 631 F.3d 1337, 1341 (11th Cir. 2011) (*citing Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)). "The mere existence of a scintilla of evidence" supporting a non-movant's case is insufficient to defeat summary judgment. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). "[A] party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Id.* at 248. Moreover, "[c]onclusory, speculative testimony in affidavits or moving papers is insufficient to raise issues of fact and defeat summary judgment." *Soremekun v. Thrifty Payless Inc.*, 509 F.3d 978, 984 (9th Cir. 2007).

**B.    The Least Sophisticated Consumer Standard**

The Ninth Circuit has adopted the "least sophisticated consumer" standard for claims brought under the FDCPA. *Donohue v. Quick Collect, Inc.*, 592 F.3d 1027, 1033 (9th Cir. 2010). In construing this standard, the Ninth Circuit takes a "materiality" approach, under which "false but non-material representations are not likely to mislead the least sophisticated consumer and therefore are not actionable under [§ 1692e]." *Id.*

The least sophisticated consumer "can be presumed to possess a rudimentary amount of information about the world and a willingness to read a collection notice with some care." *Leblanc v. Unifund CCR Partners*, 601 F.3d 1185, 1194 (11th Cir. 2010) (internal marks and citation omitted). Furthermore, "the test contains an objective component in that [w]hile protecting naïve consumers, the standard also prevents

liability for bizarre or idiosyncratic interpretations of collection notices by preserving a quotient of reasonableness ...." *Id.* (internal marks and citations omitted). "Accordingly, communications must be examined as a whole, not sentence-by-sentence, because the least sophisticated consumer standard 'does not go so far as to provide solace to the willfully blind or non-observant. Even the least sophisticated debtor is bound to read collection notices in their entirety.'" *Lee v. Select Portfolio Serv., Inc.*, Case No. 1:16-CV-1080-CAP-WEJ, 2017 WL 3000039, *6 (N.D. Ga. May 25, 2017) (quoting *Campuzano-Burgos v. Midland Credit Mgmt., Inc.*, 550 F.3d 294, 298-99 (3d Cir. 2008)).

## IV.   ARGUMENT

### A.   The Letter Is Not Misleading As A Matter Of Law

#### 1.   The Letter Accurately Represented the Status of Plaintiff's Account, and Defendants Had No Duty to Advise Plaintiff About Partial Payments

Plaintiff alleges the following to support her claims that MCM should have provided a partial payment disclosure:

- "The Defendant fails to inform the Plaintiff that should she choose one of the payment plans offered it may re-start the statute of limitations, which may expose the Plaintiff to future litigation for this debt" (ECF No. 1 at ¶ 6.12);[2]

---

[2] Defendants note that these allegations make a vague reference to "Defendant" without identifying to which particular Defendant the allegation is intended. This is improper pleading practice under the Federal Rules of Civil Procedure.

*DEFENDANTS' MOTION FOR SUMMARY JUDGMENT*                    *PAGE 8*
*AND INCORPORATED MEMORANDUM OF LAW*

- "The Defendant does not inform Plaintiff that should the statute of limitations reset, the Defendant may have the right to commence legal action, which would otherwise have been barred" (*Id*. at ¶ 6.13); and

- The Defendant sends letters on time-barred accounts informing "the consumer that he or she will not be sued due to the age of the debt; but not informing the consumer that the statute of limitations may reset if a partial payment is made on the debt, therefore allowing the Defendant the option of commencing legal action, which would otherwise be barred by the statute of limitations"; (*Id*. at ¶ 6.15).

Contrary to Plaintiff's contentions, however, Defendants did not violate the FDCPA because the Letter accurately stated that she owed a debt and explicitly notified her that the estimated statute of limitations had expired on the debt. Under the law, the information that MCM provided was far more than sufficient for the Plaintiff to evaluate her options, and MCM need not have provided additional information. In fact, a number of federal courts have held that the FDCPA imposes no duty on a defendant to advise a plaintiff of potential defenses. *See Olsen v. Cavalry Portfolio Servs., LLC*, Case No. 8:15-cv-25 20-T-23AAS, 2016 WL 4248009, at *2 (M.D. Fla. Aug. 11, 2016); *see also Ehrich v. Convergent Outsourcing, Inc.*, Case No. 15-cv-22796, 2015 WL 6470453, at *2-3 (S.D. Fla. Oct. 27, 2015) . In *Olsen*, the Court dismissed an FDCPA claim alleging that an "offer to settle" implied that the defendant "could sue to compel payment of a time-barred debt or that partial payment was better than no payment." *Olsen*, 2016 WL 4248009 at *2. The Court held that the FDCPA imposed no duty on the defendant to advise the plaintiff of "the expired limitation or the consequence of partial payment." *Id*. The Court also noted that the collection letters at issue specifically stated that the

defendant "will not sue." *Id.* Finally, the Court determined that dismissal was warranted because the letter "adopt[ed] language recently approved by the Consumer Financial Protection Bureau." *Id.*

Here, the Letter provides the same assurance as those communications in *Olsen* that Defendants "will not sue" Plaintiff because of the age of the debt. (*See* Dkt. 12-1 at 2, 5, 8, 11, 14, 17 and 20.) In addition, the Letter specifically states that "[t]he law limits how long you can be sued on the debt," thereby advising Plaintiff of their statute of limitations defense. *Id.* Accordingly, the Letter clearly disclosed that: (i) the account was time-barred; and (ii) Defendants would never sue Plaintiff on the account. To that end, these disclosures specifically address any purported confusion on the part of a least sophisticated consumer as to whether the debt was legally enforceable. *See Valle v. First Nat. Collection Bureau*, Case No. 16-q62751-Civ, 2017 WL 2126830, *5 (S.D. Fla. May 15, 2017).

Plaintiff's argument that the Letter's plain disclosure should be supplemented with a further disclosure regarding the supposed consequences of partial payment is nonsensical. The disclosure provides without qualification that Plaintiff will not be sued. As such, there is simply no basis for concluding that, in spite of that statement, Defendants would sue in the event a partial payment was made. *See Boedicker v. Midland Credit Mgmt., Inc.*, 227 F. Supp. 3d 1235, 1241 n.5 (D. Kansas 2016) regardless of Midland's internal policies, it directly and without qualification committed to

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

avoiding any suit in its letter – 'we will not sue you.'  A partial payment might revive the statute of limitations under Kansas law, but any attempt by Midland to sue the debtor would render deceptive its earlier promise not to sue, and thus would be prohibited by the FDCPA").

Moreover, Defendants did not, as Plaintiff contends,  misrepresent the legal status of the debt.  The unequivocal commitment in the Letter that Defendants "will not sue" Plaintiff is not misleading, harassing, or unfair.  It is an accurate statement that Defendants "will not sue" Plaintiff.  There is no conditional language in the disclosure. A careful reading of the Letter, which is required under the least sophisticated consumer standard, demonstrates that Defendants simply would not sue Plaintiff under any circumstance.  As such, summary judgment should be granted in favor of Defendants.

This Court should join other courts in rejecting efforts to twist a straightforward disclosure into misleading statement by speculating about future conduct that has not, and as explained below, will not, occur.  In *Cooper v. Midland Credit Management, Inc.*, Case No. 4:18-CV-82 (CDL), 2018 WL 6517448, (M.D. Ga. Dec. 11, 2018), a federal district court rejected a claim based on MCM's purported failure to include a partial payment disclosure in a similar letter because it "would only be misleading or amount to an unfair means of attempting to collect a debt if the Court inferred from [the plaintiff's] allegation that Midland would do exactly what it said it would not do: sue [the plaintiff] for the debt."  *Id.*  The court summarized its holding by stating:

> [The plaintiff] seeks to have a class action certified based on the remote possibility that a consumer could be misled into renewing an old debt and based on sheer speculation that the debt collector would then pursue collection of that renewed debt in court, notwithstanding the fact that it said it would not do so. Such speculation does not support an FDCPA claim.

*Id.* at \*5. Plaintiff's Complaint likewise attempts to manufacture a class action based on the same remote possibility and sheer speculation.

Here, Plaintiff acknowledges MCM's statement "we will not sue you for the debt," but Plaintiff does not—and cannot—allege that MCM would in fact sue her if she had made a partial payment. This is because, as in *Cooper*, "there is nothing to indicate that Midland would pursue a lawsuit to collect the debt if a partial payment was voluntarily made." *Cooper*, 2018 WL 6517448 at \*5. Plaintiff alleges no plausible scenario—apart from speculation and conclusory statements—in which Defendants would revive the statute of limitations based on a hypothetical partial payment and ultimately sue her. As such, Plaintiff fails to allege ***any*** facts to support the harm she allegedly suffered.

To accept Plaintiff's allegations would result in "liability for bizarre or idiosyncratic interpretations of collection notices," which courts have counseled against. *See Leblanc v. Unifund CCR Partners*, 601 F.3d 1185, 1193, 1194 (11th Cir. 2010). That is particularly true where "the CFPB and FTC have ***not*** determined that a debt collector must give warning to consumers of the danger of reviving a time-barred debt" and in fact mandate the disclosure at issue. *Boedicker*, 227 F. Supp. 3d at 1240, 1241 ("FTC-approved communications *exactly* match what was contained in the letter sent by

Midland: 'The law limits how long you can be sued on a debt. Because of the age of your debt, we will not sue you for it.'") (emphasis in original).

### 2. There was No Risk that Partial Payment Would Revive the Statute of Limitations Under Washington Law

The Complaint is based on an incorrect understanding of Washington law. Plaintiff presumes that a partial payment on a time-barred account automatically revives the statute of limitations. That is not so. An unequivocal intention to revive the whole debt is required in addition to partial payment. *See, e.g., J.M. Arthur & Co. v. Burke*, 83 Wash. 690, 698 (Wash. 1915) ("Even assuming that a barred debt may be revived by part payment, the payment must be made under circumstances showing a clear and unequivocal intention on the part of the obligor to revive the whole debt."). The Complaint is devoid of any such allegation and misconstrues Washington law on this issue.

While no Washington court has addressed Plaintiff's theory of liability, other courts have.[3] Recently, in *Stimpson v. Midland Credit Mgmt., Inc.*, 347 F. Supp. 3d 538, 545–46 (D. Idaho 2018) (appeal filed Oct. 10, 2018), a district court rejected a similar

---

[3] In *Bereket v. Portfolio Recovery Assoc.*, Case No. C17-0812RSM, 2017 WL4409480 (W.D. Wash. Oct. 4, 2017), the court indirectly addressed Washington law as it relates to partial payment but found that the defendant there admitted that making a partial payment could open the plaintiff to litigation. Defendants make no such admission here.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

theory of liability on summary judgment because a partial payment on a time-barred debt under applicable state law could not revive the statute of limitations, creating no risk of revival and as a matter of law, no FDCPA violation for failure to include a warning about the possible consequences of a partial payment. And, in *Madinya v. Portfolio Recovery Associates, LLC*, Case No. 18-cv-61138-BLOOM/Valle, 2018 WL 6590829 (S.D. Fla. Dec. 14, 2018), a district court granted the defendant judgment on the pleadings based on virtually identical allegations to those here because, under Florida law, "[a] payment on a debt barred by the statute of limitations without an acknowledgment of the balance of the debt as existing and a willingness to pay the debt will not take it out of the statute." *Id*. (internal quotation and citation omitted).

Here, the Complaint articulates only one legal theory in support of all of Plaintiff's claims—that partial payment automatically revives a debt under Washington law.  As in *Stimpson* and *Madinya*, Plaintiff is proceeding on an incorrect statement of Washington law.  Since a time-barred account cannot be revived by partial payment alone, "then the least sophisticated consumer could not be misled by omission of language regarding the potential consequences of such payment."  *Madinya*, 2018 WL 6590829 at *3.  The Court should grant summary judgment in favor of Defendants on this basis alone.

### 3. Defendants Expressly Agreed to Forgo Any Right to Revival of the Limitations Period Based on the Letter Itself

Even assuming *arguendo* that partial payment could have revived the statute of limitations – it could not – the disclosure that Defendants included made it clear that

*DEFENDANTS' MOTION FOR SUMMARY JUDGMENT*                    *PAGE 14*
*AND INCORPORATED MEMORANDUM OF LAW*

they were *affirmatively and expressly forgoing* any right to sue. Another federal court recently evaluated this same claim and concluded that the plaintiff ran no risk of revival because "[w]hile [state] law might allow for revival for the statute of limitations based on partial payments, Defendants *expressly agreed to forgo legal action*. . . ."  *Koerner*, 2018 WL 5961285, at *2 (emphasis added); *Cohen*, 2016 WL 4035433, at *4 (defendant was entitled to judgment as a matter of law because partial payment would have "closed" the account, "relieving Plaintiff from any further obligation," and thus could not have restarted the statute of limitations).

Here, Defendants affirmatively promised that "Due to the age of this debt, *we will not sue you* for it." [ECF no. 1 at 16] (emphasis added).  Thus, Plaintiff indisputably would have run no risk of a lawsuit had she chosen to honor her debt by beginning to make repayments.  The lack of a revival disclosure is not misleading or material as a matter of law such that Defendants are entitled to judgment on Plaintiff's FDCPA claim.

### 4.    Defendants' Policy Is To Never Revive Time-Barred Debts

Defendants' policies and procedures provide that a statute of limitations would never be revived based on a partial payment.  (*See* Declaration of John Nord ("Nord Decl.") at ¶¶ 8 and 9); *see also Boedicker*, 227 F.Supp.3d at 1242 ("Midland's policies preclude any attempt to sue on the basis of a revived debt, and the letter sent by Midland expressly agrees to avoid any suit – 'Because of the age of the debt, we will not sue you for it.'").  In other words, any partial payment made on the account would have no effect

whatsoever on the applicable statute of limitations based on Defendants' policies, and the account would therefore remain expired.[4]  Given these policies, the Letter cannot be misleading or deceiving vis-à-vis the least sophisticated consumer.

Recently in *Koerner v. Midland Credit Management, Inc.*, 347 F.Supp.2d 1143 (M.D. Fla. 2018), a federal district court granted summary judgment in favor of MCM and Midland Funding on claims virtually identical to those raised by Plaintiff here.  The court not only found that Defendants "expressly agreed to forgo legal action" but also that their policies and procedures "provide that a statute of limitations would never be revived based on partial payments."  *Id*. at 1146.  Based on that record, the court concluded "there was no scenario in which the statute of limitations would be revived and consequently, there is nothing misleading about the collection letters."  *Id*.

### 5.   The Lack of a Partial Payment Disclosure Is Not Actionable

To that extent that Plaintiff alleges Defendants falsely represented the legal status of the debt by omitting a partial payment disclosure [ECF No. 1 at 13], summary judgment is warranted because Defendants' policies render the absence of a partial payment disclosure immaterial to the least sophisticated consumer.  It is well-settled that any purported misrepresentations that "do not affect a consumer's ability to make

---

[4] Defendants also have a policy that absolutely prohibits the sale of accounts to third parties.  (Nord Decl. at ¶ 7).  Thus, there is no risk to the least sophisticated consumer that a subsequent purchaser would take advantage of a "revived" statute of limitations.

*DEFENDANTS' MOTION FOR SUMMARY JUDGMENT*                    *PAGE 16*
*AND INCORPORATED MEMORANDUM OF LAW*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

intelligent decisions" are "immaterial" and therefore not actionable under the FDCPA. *See, e.g.*, *Donohue v. Quick Collect, Inc*., 592 F.3d 1027, 1034 (9th Cir. 2010) ("In assessing FDCPA liability, we are not concerned with mere technical falsehoods that mislead no one, but instead with genuinely misleading statements that may frustrate a consumer's ability to intelligently choose his or her response.").

Given Defendants' policy of not reviving Plaintiff's account based on a purported partial payment after the expiration of the statute of limitations, the lack of a partial payment disclosure could not have "influenced" Plaintiff's "decision or ability to pay or challenge the debt." *See Dolan v. Sentry Credit, Inc.,* Case No. C17-1632-RAJ, 2018 WL 6604212, *6 (W.D. Wash. Dec. 17, 2018) (granting summary judgment based on materiality and finding that based on the record the alleged [] 'misrepresentation' does not appear to have impacted Plaintiff's ability to make an intelligent choice in his response to the Collection Lawsuit."). Similarly, here Plaintiff failed to make ***any*** payments in response to the letter. Plaintiff does not (and cannot) point to specific facts showing how her decision making would have changed as a result of the lack of a partial payment disclosure, particularly in light of Defendants' policies. Accordingly, any partial payment disclosure would not be material to the least sophisticated consumer – and could in fact be misleading in and of itself. *Id*. ("Like in *Donahue*, Plaintiff has not identified any action that he 'could have taken that was not already available' to him on the basis of the information in the Collection Lawsuit.").

**B.    The FDCPA Does Not Require Warnings Regarding Potential Revival of a Limitations Period Because Such A Disclaimer Could Be Misleading**

Plaintiff's claims also fail because the warning that Plaintiff asks this Court to require regarding the possible revival of the statute of limitations could be misleading to debtors—the very thing that the law aims to prevent. *See generally* 15 U.S.C. § 1692e. Both the CFPB and the FTC have investigated whether to require debt collectors to warn consumers regarding revival of time-barred debt, and they both have flatly <u>rejected</u> such a requirement. *Boedicker*, 227 F. Supp. 3d at 1240–41. In reaching this conclusion, the CFPB found that "the Bureau's testing to date suggests that *consumers may not fully understand such a disclosure*, because it seems counterintuitive to them." *Id.* (citing Small Business Review Panel for Debt Collector & Debt Buyer Rulemaking, *supra* at p. 5) (emphasis added). Accordingly, on this ground alone, the Court should hold that Defendants had no obligation to provide a (potentially confusing) warning regarding the hypothetical revival of the statute of limitations.

**C.    Encore And Midland Funding Are Not Debt Collectors Under The FDCPA**

The FDCPA narrowly defines the term "debt collector."   *See*   *1*5 U.S.C. § 1692a(6) (stating that a "debt collector" is any person "who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or [2] who regularly collects or attempts to collect, directly or

indirectly, debts owed or due to be owed to another").

Numerous federal district courts have found that passive debt buyers like Midland Funding, *i.e.* entities that purchase debt but are not involved in the collection of that debt, are not debt collectors within the meaning of the FDCPA.  *See, e.g., McAdory v. M.N.S. & Assoc., LLC*, Case No. 3:17-cv-00777, 2017 WL 5071263, at *3 (D. Or. Nov. 3, 2017) (finding that "[d]ebt purchasing companies like DNF who have no interactions with debtors and merely contract with third parties to collect on the debts they have purchased simply do not have the principal purpose of collecting debts"); *Gold v. Midland Credit Management, Inc*., 82 F.Supp.3d 1064, 1071 (N.D. Cal. 2015) (in the absence of "evidence showing a purpose to collect on those debts" Midland Funding is not a debt collector under the "principal purpose prong"); *Kasalo v. Trident Asset Management, LLC*, 53 F.Supp.3d 1072, 1079 (N.D. Ill. 2014) (determining that a passive debt buyer was not a debt collector under either prong of definition).

Recently in *Dorrian v. LVNV Funding, LLC*, 479 Mass. 265 (Mass. 2018), the court analyzed the legislative history of the FDCPA, finding that:

> Despite a careful consideration of what entities would be covered by the definition and what entities would be excluded, there is no evidence that Congress ever intended to include within this definition debt buyers that own debts but use a third party to collect the debts and therefore have no contact with the debtors.

*Id*. at 273 (citing S. Rep. No. 95-382 and H. Rep. No. 95-131).  The court noted that legislative history indicated that Congress "did not consider passive debt buyers."  *Id.*

Finally, the Court found that as the defendant had "no employees and no contact whatsoever with debtors, it seems to be outside the core concerns of Congress." *Id*.

In *Koerner*, the court also recently found that Midland Funding was not a debt collector within the ambit of the FDCPA. 347 F.Supp.3d at 1147 (because Midland Funding is a debt buying company that only purchases and holds accounts, has no employees and does not service accounts for others, "[t]here is no genuine dispute that Midland Funding LLC is not a debt collector within the meaning of the FDCPA.").

With respect to the second definition of "debt collector" under the FDCPA, in *Henson v. Santander Consumer USA, Inc*., 137 S.Ct. 1718 (2017), the United States Supreme Court held that an entity like Midland Funding, which only owns debts due to itself, is not a debt collector under the second prong of the definition. The Supreme Court determined that an entity can only be a debt collector under this second definition when it is collecting debt on behalf of another company or person. *Id.* at 1721-22.

Plaintiff alleges in conclusory fashion that Midland Funding and Encore are "debt collectors." [ECF No. 1 at ¶ 4.5]. Plaintiff makes no factual allegations that Midland Funding or Encore is a debt collector under either prong of the statutory definition.

Here, Midland Funding merely purchases and holds accounts. (Nord Decl. at ¶ 14.) It has no employees and engages in no collection activities through itself in the state of Washington. (*Id.* at ¶ 15). Midland Funding is entirely passive and conducts debt collection on its own behalf through MCM, the servicer of the accounts owned by

Midland Funding, or through licensed attorneys.  (*Id*. at ¶ 16).  Accordingly, Midland Funding's principal purpose is not debt collection.  Finally, Midland Funding only owns accounts and does not service or collect on accounts due to another.  (*Id*. at ¶ 17).

Encore is further attenuated from the definition of a debt collector under the FDCPA.  Encore has no interaction with consumers and does not engage in the collection of debt. (Nord Decl. at ¶ 20).  Moreover, neither Encore or Midland Funding can be vicariously liable for any activities of MCM because they are not debt collectors.  *See Gold*, 82 F.Supp.3d at 1072 (holding that "[b]ecause Midland Funding does not fit such definition, it cannot be held vicariously liable for MCM's collection activities.").

## V.   CONCLUSION

Based on the foregoing reasons, and because there are no genuine issues of material fact, the Court should grant summary judgment in Defendants' favor.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

Dated:  April 15, 2019

HOLLAND & KNIGHT LLP

By:   *s/ David J. Elkanich*
      David J. Elkanich, WSBA No. 35956
      2300 US Bancorp Tower
      111 SW Fifth Avenue
      Portland, OR  97204
      Telephone:  503.243.2300
      E-mail: serve.dje@hklaw.com

*Attorneys for Defendants Encore Capital Group, Inc., Midland Funding LLC, Midland Credit Management, Inc.*

*DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND INCORPORATED MEMORANDUM OF LAW*                    *PAGE 22*

CERTIFICATE OF SERVICE

I hereby certify that I caused the foregoing **DEFENDANTS ENCORE CAPITAL GROUP, INC., MIDLAND CREDIT MANAGEMENT, INC. AND MIDLAND FUNDING LLC'S MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM OF LAW INITIAL DISCLOSURES OF DEFENDANTS ENCORE CAPITAL GROUP, INC., MIDLAND FUNDING LLC, AND MIDLAND CREDIT MANAGEMENT, INC.** to be served on the following person[s]:

> Brian Cameron
> Cameron Sutherland, PLLC
> 421 W. Riverside Ave., Ste. 660
> Spokane, WA 99201
> Tel: (509) 315-4507
> Fax: (509) 315-4585
> Email: bcameron@cameronsutherland.com

by the following indicated method or methods:

☑ by CM/ECF electronically mailed notice from the Court on the date set forth below.

☐ by mailing full, true and correct copies thereof in sealed, first class postage prepaid envelopes, addressed to the parties and/or their attorneys as shown above, to the last-known office addresses of the parties and/or attorneys, and deposited with the United States Postal Service at Portland, Oregon, on the date set forth below.

☐ by causing full, true, and correct copies thereof to be hand-delivered to the parties and/or their attorneys at their last-known office addresses listed above on the date set forth below.

☐ by sending full, true, and correct copies thereof, via overnight courier in sealed, prepaid envelopes, addressed to the parties and/or their attorneys as shown above, to the last-known office addresses of the parties and/or their attorneys, on the date set forth below.

☐ by faxing full, true, and correct copies thereof to the fax machines which are the last-known fax numbers for the parties' and/or attorneys' offices, on the date set forth below.

DATED: April 15, 2019.

> *s/ David J. Elkanich*
> David J. Elkanich

CERTIFICATE OF SERVICE – PAGE 1

#63030625_v4