1

2

3

4

5                     UNITED STATES DISTRICT COURT

6                    EASTERN DISTRICT OF WASHINGTON

7    RACHEL ELSTON, and all others
     similarly situated,                      NO:  2:18-CV-0071-TOR
8
                          Plaintiffs,         ORDER ON CROSS MOTIONS FOR
9                                             SUMMARY JUDGMENT

10         v.

11   ENCORE CAPITAL GROUP, INC.,
     MIDLAND FUNDING, LLC,
     MIDLAND CREDIT
12   MANAGEMENT, INC.,

13                        Defendants.

14

15        BEFORE THE COURT are the Parties' Cross Motions for Summary

16   Judgment (ECF Nos. 27; 32).  These motions were heard with oral argument on

17   June 26, 2016.  The Court has reviewed the record and the completed briefing,

18   heard from counsel and is fully informed.  For the reasons discussed below,

19   Defendants' Motion (ECF No. 27) is **granted** and Plaintiff's Motion (ECF No. 32)

20   is **denied**.

ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT ~ 1

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

**BACKGROUND**[1]

This case concerns a letter sent in an attempt to collect on an old debt. Plaintiff "allegedly incurred an obligation to Chase Bank" sometime prior to 2009. ECF No. 1 at 8, ¶ 6.1. Subsequently, Chase Bank sold the debt to Defendants[2] of which Midland Credit Management, Inc. then sought to collect on the account by sending a letter to Plaintiff in March of 2017. ECF No. 1 at 8-9, ¶¶ 6.4-6.6. Plaintiff takes issue with this letter.[3]

---

[1]    The underlying facts are not in dispute.

[2]    According to the Complaint, Defendant "Midland Funding, LLC is owned 100% by Midland Portfolio Services, Inc.", which is owned by "Midland Credit Management, Inc.", which in turn "is owned by Encore Capital Group, Inc." ECF No. 1 at 3, ¶ 4.2. Plaintiff alleges that Defendants are "debt collectors" as defined by 15 U.S.C. § 1692a(6). ECF No. 1 at 3, ¶ 4.5. Defendants Encore and Midland Funding seek summary judgment in their favor because they are not debt collectors. Plaintiff does not address this issue with admissible evidence and therefore they are dismissed on this basis as well.

[3]    As Defendants correctly point out, Plaintiff refers to a letter from May of 2017 in her Motion for Summary Judgment, but Plaintiff only referenced the March letter in her Complaint. ECF No. 41 at 3; *see* ECF Nos. 1 at 16; 33 at 3. In

ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT ~ 2

The letter from Midland Credit Management, Inc. consists of two pages.  *See* ECF No. 1 at 16-17.  The first page prominently displays a box with a heading "CALL US TODAY".  Below the heading, the letter states "Available Payment Options": (1) "40% OFF", (2) "20% OFF Over 6 Months", and (3) "Monthly Payments As Low As: $50 per month Call today to discuss you options and get more details."  Below the options, the letter includes another header, "Benefits of Paying Your Debt" and lists the following:

– Save $741.35 if you pay by 04-27-2017 –
– Put this debt behind you –
– No more communication on this account –
– Peace of mind –

Below the signature line, the letter includes the following statement:

> The law limits how long you can be sued on a debt and how long a debt can appear on your credit report.  Due to the age of this debt, we will not sue you for it or report payment or nonpayment of it to a credit bureau.

ECF No. 1 at 16.

Plaintiff did not make any payments on the debt nor did she promise to pay on the debt.  Instead, on February 27, 2018, Plaintiff filed this suit, personally, and on behalf of others similarly situated, asserting one claim for a violation of the Fair

---

any event, the material elements of the letters are identical, and the Court need not address the two letters separately.

ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT ~ 3

1   Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692e.  ECF No. 1 at 12-13,

2   ¶¶ 7.1-7.6.  Plaintiff complains that Defendants violated the FDCPA by (1) "falsely

3   representing the legal status of the debt" and (2) using "false representations and/or

4   deceptive means to collect or attempt to collect a debt."  ECF No. 1 at 13, ¶¶ 7.4-

5   7.5.  Plaintiff requests actual and statutory damages, along with costs and attorney

6   fees.  ECF No. 1 at 13, ¶ 7.6.

7        Defendants filed a Motion for Summary Judgment (ECF No. 27) and

8   Plaintiff filed a Motion for Summary Judgment (ECF No. 32).  These Motions are

9   now before the Court.

10                        **STANDARD OF REVIEW**

11       A movant is entitled to summary judgment if "there is no genuine dispute as

12  to any material fact and that the movant is entitled to judgment as a matter of law."

13  Fed. R. Civ. P. 56(a).  A fact is "material" if it might affect the outcome of the suit

14  under the governing law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248

15  (1986).  An issue is "genuine" where the evidence is such that a reasonable jury

16  could find in favor of the non-moving party.  *Id.*  The moving party bears the

17  "burden of establishing the nonexistence of a 'genuine issue.'"  *Celotex Corp. v.*

18  *Catrett*, 477 U.S. 317, 330 (1986).  "This burden has two distinct components: an

19  initial burden of production, which shifts to the nonmoving party if satisfied by the

20

ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT ~ 4

moving party; and an ultimate burden of persuasion, which always remains on the moving party." *Id.*

Per Rule 56(c), the parties must support assertions by: "citing to particular parts of the record" or "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Only admissible evidence may be considered. *Orr v. Bank of America, NT & SA*, 285 F.3d 764 (9th Cir. 2002). The nonmoving party may not defeat a properly supported motion with mere allegations or denials in the pleadings. *Liberty Lobby*, 477 U.S. at 248. The "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [the non-movant's] favor." *Id.* at 255. However, the "mere existence of a scintilla of evidence" will not defeat summary judgment. *Id*. at 252.

## DISCUSSION

Congress enacted the FDCPA in 1977 in response to the "abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors." 15 U.S.C. § 1692(a). Among other things, the FDCPA provides that "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. The FDCPA identifies specific conduct that violates § 1692e, including, *inter alia*, "[t]he false representation of . . . the character, amount, or legal status of any debt"

1  and "[t]he use of any false representation or deceptive means to collect or attempt

2  to collect any debt or to obtain information concerning a consumer." 15 U.S.C.

3  § 1692e(2), (10). "As a 'broad remedial statute,' the FDCPA must be liberally

4  construed in favor of the consumer in order to effectuate this goal of eliminating

5  abuse." *Hernandez v. Williams, Zinman & Parham PC*, 829 F.3d 1068, 1078-79

6  (9th Cir. 2016) (citations omitted).

7  Defendants argue (1) that Plaintiff does not have standing to pursue the

8  FDCPA claim because she has not incurred any concrete injury and (2) that

9  Plaintiff's claim otherwise fails on the merits. The Court agrees and addresses

10  each argument in turn.

11  A. **Standing**

12  "Standing to sue is a doctrine rooted in the traditional understanding of a

13  case or controversy." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). "The

14  doctrine developed in our case law to ensure that federal courts do not exceed their

15  authority as it has been traditionally understood." *Id.* "The doctrine limits the

16  category of litigants empowered to maintain a lawsuit in federal court to seek

17  redress for a legal wrong." *Id.* "[T]he "irreducible constitutional minimum" of

18  standing consists of three elements[:]" [t]he plaintiff must have (1) suffered an

19  injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant,

20  and (3) that is likely to be redressed by a favorable judicial decision." *Id.*

ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT ~ 6

1   (*quoting Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560 (1992).  "The plaintiff,

2   as the party invoking federal jurisdiction, bears the burden of establishing these

3   elements." *Id.*

4          Injury in fact is "the '[f]irst and foremost' of standing's three elements."  *Id*.

5   (brackets in original) (quoting *Steel Co. v. Citizens for Better Environment,* 523

6   U.S. 83, 103 (1998)).  "Injury in fact is a constitutional requirement, and '[i]t is

7   settled that Congress cannot erase Article III's standing requirements by statutorily

8   granting the right to sue to a plaintiff who would not otherwise have standing.'"

9   *Id*. at 1547-48 (quoting *Raines v. Byrd*, 521 U.S. 811, 820, n.3 (1997)).  "To

10  establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of

11  a legally protected interest' that is 'concrete and particularized' and 'actual or

12  imminent, not conjectural or hypothetical.'"  *Id*. at 1548 (quoting *Lujan,* 504 U.S.

13  at 560).

14         "[I]injury in fact must be both concrete *and* particularized."  *Id*. (emphasis in

15  original).  "For an injury to be 'particularized,' it 'must affect the plaintiff in a

16  personal and individual way.'"  *Id.* (quoting *Lujan*, 504 U.S. at 560, n.1).  "A

17  'concrete' injury must be '*de facto* '; that is, it must actually exist."  *Id.* (citing

18  Black's Law Dictionary 479 (9th ed. 2009).  "When we have used the adjective

19  'concrete,' we have meant to convey the usual meaning of the term—'real,' and not

20  'abstract.'"  *Id.* (citing Webster's Third New International Dictionary 472 (1971);

Random House Dictionary of the English Language 305 (1967)).  "'Concrete' is not, however, necessarily synonymous with 'tangible.'"  *Id.* at 1549.  "Although tangible injuries are perhaps easier to recognize, . . . intangible injuries can nevertheless be concrete."  *Id.*  "In determining whether an intangible harm constitutes injury in fact, both history and the judgment of Congress play important roles."  *Id.*

"Congress' role in identifying and elevating intangible harms does not mean that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right."  *Id.*  "Article III standing requires a concrete injury even in the context of a statutory violation."  *Id.*  "For that reason, . . . a bare procedural violation, divorced from any concrete harm, [does not] satisfy the injury-in-fact requirement of Article III."  *Id.*  "This does not mean, however, that the risk of real harm cannot satisfy the requirement of concreteness."  *Id.*

Defendants raised the issue of standing, asserting that "the fact that Plaintiff cannot plead any actual harm establishes the case must be dismissed for failure to plead standing under Article III."  ECF No. 41 at 15.  In support, Defendants cited to the case of *Casillas v. Madison Avenue Associates, Inc*, 926 F.3d 329 (7th Cir. 2019).  Plaintiff did not respond to the issue of standing.

In *Casillas*, the debt collector sent the consumer "a debt-collection letter that described the process [that the statute provides for verifying a debt], but it neglected to specify that she had to communicate *in writing* to trigger the statutory protections[,]" as is required under 15 U.S.C. § 1692g. *Id.* at 331 (emphasis added). The Seventh Circuit noted that "[t]he only harm that [she] claimed to have suffered . . . was the receipt of an incomplete letter" and concluded that "that is insufficient to establish federal jurisdiction." *Id.* at 331-32. The Court reasoned: "no harm, no foul", and explained:

> Casillas did not allege that Madison's actions harmed or posed any real risk of harm to her interests under the Act. She did not allege that she tried to dispute or verify her debt orally and therefore lost or risked losing the statutory protections. Indeed, she did not allege that she ever even considered contacting Madison or that she had any doubt about whether she owed Harvester Financial Credit Union the stated amount of money. She complained only that her notice was missing some information that she did not suggest that she would ever have used. Any risk of harm was entirely counterfactual: she was not at any risk of losing her statutory rights because there was no prospect that she would have tried to exercise them. Because Madison's mistake didn't put Casillas in harm's way, it was nothing more than a "bare procedural violation." *Spokeo*, 136 S.Ct. at 1549. Casillas had no more use for the notice than she would have had for directions accompanying a product that she had no plans to assemble.

*Id.* at 334. In disagreeing with the Sixth Circuit's approach on the same issue, the Seventh Circuit emphasized the need for individual harm even where the standard for the reviewing the conduct is viewed from the least-sophisticated consumer:

> It is certainly true that the omission put those consumers who sought to dispute the debt at risk of waiving statutory rights. But it created no risk for

ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT ~ 9

1   the plaintiffs in that case, who did not try (and, for that matter, expressed no

2   plans to try) to dispute the debt.  It is not enough that the omission risked

    harming *someone*—it must have risked harm *to the plaintiffs*.

3   *Id.* at 336.

4          The Seventh Circuit's reasoning is compelling and is particularly relevant in

5   this case.  Here, Plaintiff does not claim that she was misled by anything in the

6   letter.  She does not allege that she was confused about the status of her debt or

7   that she took any action based on Defendants' alleged failure to warn her of the

8   supposed risk of reviving the statute of limitations.  She did not pay on the debt or

9   make a promise to pay.  Her debt has not been revived and there is nothing to

10  suggest she is at risk of such.  She simply received the letter and filed suit.  As

11  such, Plaintiff has not alleged any concrete harm based on her receiving the letter.

12         In the case of *Tourgeman v. Collins Fin. Servs, Inc.*, the Ninth Circuit held

13  that a plaintiff had standing under the FDCPA based solely on the debt collector

14  *sending* the offending letter.  There, the debt collector sent a debt-collection letter

15  that provided a wrong name for the original creditor.  The Court specifically

16  recognized that "Tourgeman could not have suffered any pecuniary loss or mental

17  distress as the result of a letter that he did not encounter until months after it was

18  sent—when related litigation was already underway—the injury he claims to have

19  suffered was the violation of his right not to be the target of misleading debt

20

ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT ~ 10

1    collection communications." *Tourgeman v. Collins Fin. Servs., Inc.*, 755 F.3d

2    1109, 1116 (9th Cir. 2014).

3         However, *Tourgeman* appears inconsistent with the Supreme Court's

4    subsequent decision in *Spokeo* and cannot be relied upon.  As the Central District

5    of California persuasively reasoned:

6         [R]eliance on *Tourgeman* is misplaced for two reasons.  First, the Ninth
          Circuit decided *Tourgeman I* before the Supreme Court decided *Spokeo v.*
7         *Robins.*  More importantly, after *Spokeo, Tourgeman* was remand to the
          District Court in a case now called *Tourgeman II.*  There, the District Court
8         held that the plaintiff lacked standing to pursue his claims based on *Spokeo* .
          . . .

9

10   *Blue v. Diversified Adjustment Serv.*, No. 5:17-CV-00366-SVW-KK, 2017 WL

11   3600723, at *2 (C.D. Cal. Aug. 11, 2017) (finding a consumer does not have

12   standing to sue for debt collector's charging of a convenience fee because he never

13   paid the fee).  This conclusion is sound.  Plaintiff does not have standing to pursue

14   the FDCPA claim because she has not incurred any concrete injury.

15   B. **Merits**

16        Plaintiff argues that Defendants violated the FDCPA (1) by failing to inform

17   the consumer that the law prohibits the debt-collector from suing to collect the

18   time-barred debt and (2) by informing the consumer of the benefits of payment

19   without mentioning the risk that partial payment or promising to pay could revive

20

ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT ~ 11

the statute of limitations.  ECF No. 32 at 14-15.  The Court finds that Defendants have not violated the FDCPA.

   1.  **Defendants adequately informed Plaintiff of the status of the debt**

   The Court finds Defendants adequately informed Plaintiff of the status of the debt.  The letter clearly states that "[t]he law limits how long you can be sued on a debt" and states that, "[d]ue to the age of this debt, we will not sue you for it[.]" ECF No. 1 at 16.   While the letter does not specifically mention the "statute of limitations" having run, the letter uses basic language (1) that conveys the substance of the underlying legal concept and (2) clearly informs the consumer that Defendants will not sue them based on the age of the debt.  Numerous courts have held there is nothing misleading about this statement.  *See*, *e.g.*, *Boedicker v. Midland Credit Mgmt., Inc.*, 227 F. Supp. 3d 1235, 1241 (D. Kan. 2016); *Smith v. Dynamic Recovery Sols. LLC*, No. 2:19-CV-00135-DCN, 2019 WL 2368460, at *4 (D.S.C. June 5, 2019) ("Even the least sophisticated consumer could draw a connection between these two sentences and conclude that the reason [defendant] is not suing for the debt is because the age of the debt"); *Trichell v. Midland Credit Mgmt., Inc.*, No. 4:18-CV-00132-ACA, 2018 WL 4184570 at *4 (N.D. Ala. Aug. 31, 2018); *Koerner v. Midland Credit Mgmt., Inc.*, 347 F. Supp. 3d 1143, 1146 (M.D. Fla. 2018); *Belicia Smith v. Dynamic Recovery Solutions, LLC*, No. 2:19-CV-00135-DCN, 2019 WL 2368460, at *3 (D.S.C. June 5, 2019) (finding, *inter*

ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT ~ 12

1    *alia*, that the creditor did not violate the FDCPA by using "will not sue" instead of

2    "cannot sue").

3        This case is distinguishable from *Pantoja v. Portfolio Recovery Assocs.,*

4    *LLC*, where the letter used the term "settle" and did not include the statement "the

5    law limits how long you can be sued on a debt."  852 F.3d 679, 686 (7th Cir.

6    2017), *cert. denied,* 138 S. Ct. 736 (2018) (finding letter including *only the second*

7    *half of the approved language* was not sufficient).  This distinction is crucial.  As

8    the Court in *Pantoja* reasoned, the bare statement – "Because of the age of your

9    debt we will not sue you for it" – would leave the reader "to wonder whether [the

10   creditor] has chosen to go easy on this old debt out of the goodness of its heart, or

11   perhaps because it might be difficult to prove the debt, or perhaps for some other

12   reason."  The case of *Smothers v. Midland Credit Mgmt., Inc*., is also

13   distinguishable.  16-2202-CM, 2016 WL 7485686 at *3 (D. Kan. Dec. 29, 2016).

14   There, the Court found the statement technically true, but misleading *in context*

15   because the letter listed the benefits, but not risks of payment *where partial*

16   *payment could revive the debt under Kansas state law* and then the debt collector

17   could sell the debt (citing Kan. Stat. Ann. § 60-520)).  As discussed below, this is

18   not the law in Washington.

19       Notably, as Defendants highlight, the language *exactly* tracks (1) the

20   language required by a consent order that Defendants entered with the Consumer

ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT ~ 13

Financial Protection Bureau in 2015 and (2) the language recommended by the

Federal Trade Commission.  ECF No. 37 at 4; *see* ECF No. 38-3 at 39-40 (Consent

Order); *Boedicker v. Midland Credit Mgmt., Inc.*, 227 F. Supp. 3d 1235, 1241 (D.

Kan. 2016); *Genova v. Total Card, Inc.*, 193 F. Supp. 3d 360, 367–68 (D.N.J.

2016) ("The Court also judicially notices nearly identical language that both the

[CFPB] and [FTC], two agencies tasked with enforcing the FDCPA, have required

collectors of time-barred debts to adopt in publicly filed consent decrees.").  While

this may not be binding on the Court, it is persuasive that two agencies tasked with

oversight into this very issue support the language used.

### 2.  **No disclosure about the risk of partial payment is needed**

Plaintiff assert that Defendants violated 15 U.S.C. § 1692e by failing to

inform Plaintiff that partial payment or a promise to pay could restart the statute of

limitations on their debt.  ECF No. 32 at 14.  Their argument consists of two bullet

points:

> It is misleading and deceptive for a debt collector to obfuscate, avoid, or otherwise fail to inform consumers, in connection with the collection of a debt, of "the significant risk" of losing the otherwise "ironclad protection" of the statute of limitations by making a partial payment or promise to pay on time-barred debt. *Pantoja*, 852 F.3d 679, 684-685.

> Simply "listing the 'benefits' of paying stale debt – while omitting the concurrent risks of paying the debt – is misleading to the least sophisticated consumer," and therefore a violation of the FDCPA. *Smothers*, 2016 WL 7485686, at *3.

ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT ~ 14

1   ECF No. 32 at 14-15.

2        The Court finds that to comply with the FDCPA Defendants need not

3   include a disclosure informing Washington state consumers of the supposed risks

4   of partial payments or entering a payment plan.  Importantly, in Washington,

5   partial payment or a promise to pay does not, alone, revive the debt.  *J. M. Arthur*

6   *& Co. v. Burke*, 83 Wash. 690, 698 (1915) ("Even assuming that a barred debt may

7   be revived by part payment, the payment must be made under circumstances

8   showing a clear and unequivocal intention on the part of the obligor to revive the

9   whole debt.  The naked fact of payment or entry of credit is wholly insufficient.");

10  RCW 4.16.280 ("No acknowledgment or promise shall be sufficient evidence of a

11  new or continuing contract whereby to take the case out of the operation of this

12  chapter, unless it is contained in some writing signed by the party to be charged

13  thereby . . ."); *Lombardo v. Mottola*, 18 Wash. App. 227, 230 (1977) ("where the

14  acknowledgment is made after the statute has already run, the action must be upon

15  the new agreement, consequently it is in the nature of an original obligation and

16  should be strictly construed").  In such circumstances, Defendants need not include

17  a disclosure about the risk of partial payment.  *See*, *e.g.*, *Stimpson v. Midland*

18  *Credit Mgmt., Inc.*, 347 F. Supp. 3d 538, 546 (D. Idaho 2018) ("Because there was

19  no risk of revival, the Court concludes, as a matter of law, that Midland's dunning

20  letter did not violate the FDCPA by dint of failing to include a more specific

ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT ~ 15

warning that a partial payment might reset the limitations clock."); *Madinya v. Portfolio Recovery Assocs., LLC*, No. 18-CV-61138, 2018 WL 4510151, at *5 (S.D. Fla. Sept. 20, 2018) ("if a time-barred debt cannot be revived by partial payment alone under Florida law, then the least sophisticated consumer could not be misled by omission of language regarding the potential consequences of such payment"); *cf. Smothers v. Midland Credit Mgmt., Inc.*, 2016 WL 7485686 at *3 (FDCPA violation for failing to disclose fact that, under *Kansas* law, partial payment could revive the underlying debt).

**ACCORDINGLY, IT IS HEREBY ORDERED:**

1. Defendants Encore Capital Group, Inc. Midland Funding, LLC, and Midland Credit Management, Inc.'s Motion for Summary Judgment (ECF No. 27) is **GRANTED**.

2. Plaintiff Rachel Elston's Motion for Summary Judgment (ECF No. 32) is **DENIED**.

The District Court Executive is directed to enter this Order, enter judgment for Defendants, furnish copies to the parties, and close the file.

DATED July 11, 2019.



THOMAS O. RICE
Chief United States District Judge

ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT ~ 16